Verdict for the United States for the whole amount of duties.

---

## Case No. 15,648.

UNITED STATES v. LYNCH et al.

[2 N. Y. Leg. Obs. 51.]

Circuit Court, S. D. New York. 1843.

SEAMEN — REVOLT — REFUSING TO GO TO SEA — ORDERS FROM PILOT—TRIAL—FEDERAL JURISDICTION.

1. Under the act of congress of 1835 [4 Stat. 775], it was held that an indictment lay in the United States circuit court in admiralty, against the seamen and crew of a vessel who had endeavored to commit a revolt and mutiny on board of the ship, while she lay at anchor about 60 yards from the wharf in the city of New York, ready for sea, and in the stream of the East river. where the tide ebbs and flows.

2. The pilot of a vessel cleared at the customhouse and ready for sea with the crew on board,

was an officer of said ship and vessel within the meaning, spirit and intent of the act of congress of 1835, § 2.

3. While the master and mates of the vessel had gone on shore, that the pilot had authority to order the crew to duty, and that a disobedience of his orders, rendered the prisoners liable to indictment under the act.

[Cited in U. S. v. Forbes, Case No. 15,129.]

4. The master had a discretion as to the number of his crew requisite to be employed to navigate the vessel while at sea.

5. In a criminal case, the counsel for the prisoners had a strict legal right to submit the law and the facts of the case to the jury, and call upon them to say, whether the prisoners were guilty in law of the offence charged against them.

6. The court in such a case felt themselves bound distinctly and positively to charge the jury upon the points of law raised by the prisoner's counsel.

7. Where seamen on board of a vessel refused to do duty on the ground they were not bound to go the voyage by the terms of the shipping articles, and to do the duty which they were ordered to do, it was held that they should have made such objection at the time of the disobedience of orders.

8. Although the state courts might have jurisdiction of certain offences committed on board of vessels while lying within the municipal territory of such state, yet the circuit court of the United States would take jurisdiction and exercise their authority in cases of mutiny and revolt, or endeavor to make a revolt on board of such vessels, by virtue of the power conferred in the act of 1835, § 2

In admiralty. This was an indictment against the prisoners [Lynch and Wilder] under the act of congress of the United States, passed March 3, 1835 (section 2), for an endeavor to make a revolt and mutiny on board of the American ship Gaston, bound on a voyage from the port of New York to the port of Savannah in Georgia. The prisoners upon being arraigned pleaded not guilty, and the cause came on for trial before a jury, and on the trial of which the pilot of the vessel in the harbor of New York was called by the government as a witness. The witness testified that the vessel had cleared at the custom-house for Savannah, Georgia; that the crew shipped for the voyage had rendered themselves on board; and that the vessel had left her fastenings at the wharf and dropped out into the stream, some 50 or 60 yards from the dock at the foot of Maiden Lane into the East river, and was there at anchor when the offence charged against the prisoners was committed. It appeared also in evidence, that the master and mate of the vessel, had rendered themselves on board; that the pilot had also come on board to take the vessel down the bay and out at sea; that the master, finding he had shipped a more numerous crew than he needed, went ashore in a boat, together with the mate and one or two more of the crew for the purpose of leaving them behind; that after the master and mate had left the ship and gone ashore, the pilot directed the prisoners with the rest of the crew on board to weigh anchor and drop down the harbor into the bay below Governor's Island. The two prisoners, in particular, refused to do so, and refused to obey the orders of the pilot. The whole crew were dissatisfied, and said they were going to sea short-handed, and made an opposition to the pilot's orders. This state of things continued until one of the officers of the vessel returned on board, when learning the state of things in regard to the crew, he went to the United States court and had the prisoners arrested, and they were subsequently indicted for the offence, and now put upon trial. The mate testified that he had not particularly ordered the men to duty, but he supposed they were resolved not to do duty on board of the ship by the account the pilot gave of them, when he, the witness, returned on board of the ship.

The prosecutor upon proving these facts rested. The cause was then summed up to the jury, and the counsel for the prisoners stated, that he should insist upon the doctrine, that in criminal cases the jury were judges both of the law and the facts, and that in the present case he intended distinctly to put the case to the jury to decide whether the prisoners upon the facts proved had been guilty of any offence charged in the indictment. The act of congress, passed March 3, 1835, contains the following provision: "That if any one or more of the crew of any American ship or vessel on the high seas, or any other waters within the admiralty and maritime jurisdiction of the United States, shall endeavor to make a revolt or mutiny on board such ship or vessel, or shall combine, conspire or confederate with any other person or persons on board to make such revolt or mutiny, or shall solicit, incite or stir up any other or others of the crew to disobey or resist the lawful orders of the master or other officer of such ship or vessel, or to refuse or neglect their proper duty on board thereof, or to betray their proper trust therein, or shall assemble with others in a tumultuous and mutinous manner, or make a riot on board thereof, or shall unlawfully confine the master or other commanding officer thereof, every such person so offending, shall, on conviction thereof, be punished by a fine not exceeding $1,000, or by imprisonment not exceeding five years, or by both, according to the nature and aggravation of the offence." The first point the counsel stated, was as to the jurisdiction of this court to try the offence charged against the prisoners. The vessel lay in the East river, within 60 yards of the shore, and within the municipal jurisdiction of the city, county and state of New York; and the learned counsel argued that when the state courts had jurisdiction, the United States courts ought not to interfere; that the police department for the city of New York should have been resorted to to preserve

the peace and enforce obedience on board of the vessel; that if the present act of congress gave the court jurisdiction, they ought not to interfere and clash with the state jurisdiction, that under the act of congress of 1790 [1 Stat. 112], the United States would not have jurisdiction of this offence. U. S. v. Bevan, 3 Wheat. [16 U. S.] 390. The next point was, that the prisoners were not bound to go to sea short-handed, with anything less than the original number of the crew who had signed shipping articles for the voyage; that the master had violated his contract with the seamen by turning some of the men ashore, and the remainder were not bound to continue the voyage under such circumstance as existed in the present case. Third, that the pilot was not the master or other officer intended by the act of congress, as the person entitled to command the vessel, and that a refusal to obey the pilot while the mate and captain were neither of them on board was not such a refusal and disobedience of orders on shipboard as would render the men liable to indictment under the act. Fourth, that the shipping articles had not been produced to show that the men had shipped for the voyage, or were bound to duty on board.

The district attorney, for the United States, also summed up to the jury, and urged the conviction of the prisoners.

The District Attorney, for the United States.

Alanson Nash, for the prisoners.

BY THE COURT (charging jury). The course proposed by the prisoners' counsel had been an unusual one. Nevertheless, the court would say that the counsel for the prisoners had a strict legal right to call upon the jury to decide the law and the facts in a criminal case, but the court in such a case would fully express their opinion to the jury what the law was, and felt bound in the present case to charge the jury distinctly and positively upon the points raised by the prisoners' counsel.

In the first place, they would charge the jury that the locus in quo where the offence was committed was clearly within the admiralty and maritime jurisdiction of the United States and of this court. That the act of 1835, was different from the act of congress of 1790. In one case the statute had said that the offence if committed on the high seas, or any other waters within the admiralty and maritime jurisdiction of the United States, this court should have jurisdiction. In the first act of 1790, the offence must have been committed in a place under the sole and exclusive jurisdiction of the United States, out of the jurisdiction of any

particular state. That the jurisdiction of the United States court, under the act of 1835, extended to all places and waters where the tide ebbs and flows.

To the next point, the court charged the jury, that it was incumbent upon the prisoners to satisfy the jury that the crew left on board were incompetent in point of numbers to navigate the vessel safely at sea; they had furnished no evidence on this point, and the master was invested by law, in the absence of any proof to the contrary, with a discretion as to the number of men that would be required to navigate his vessel. All parties were interested, the master as well as the crew, to go to sea with a sufficient number of men and not short-handed, and the law would presume that he did the best for all parties of whatever was necessary to be done, until proof had been offered to the contrary.

To the third point, the court said that they charged the jury, that the pilot was within the intent, spirit, and meaning of the act of congress, an officer on board of the vessel, and as such the prisoners were bound to have obeyed the lawful orders and commands of the pilot on board when he had rendered himself on board to pilot the vessel to sea; that the navigation laws clearly contemplated that a pilot should be employed to take out and bring in vessels. This was the common maritime usage and custom of all nations; and that the jury in the present case were bound to consider that the pilot's orders to put the vessel to sea was a lawful order of the master or other officer of the ship, and that a refusal to obey the pilot was a refusal and neglect of the proper duty of the prisoners on board of such ship, and rendered them clearly liable under the act of congress.

To the fourth point, the court stated that the shipping articles had not been produced, and that if the prisoners were really ordered to go a voyage they had not shipped for, they should have made the objection at the time of their refusal to do duty, which they had not done. The court, under the circumstances, would presume that the orders given by the pilot were such as show that the prisoners were bound to obey by the terms of the shipping articles, and, if so, the jury ought to convict the prisoners.

The jury thereupon retired and came into court and said they found the prisoners guilty in manner and form charged in the indictment.

THE COURT on a subsequent day passed sentence and ordered the prisoners to be confined in the county gaol for 60 days and pay a fine of $1 each.